## Connolly Estate

Before Sinkler, P. J., Klein, Bolger, Ladner and Hunter, JJ.

*Harry Fischer*, for exceptant.

*Ralph C. Donohoe*, contra.

SINKLER, P. J., April 22, 1949.—At the time of making his will, decedent was in process of purchasing 25 shares of prior preferred and 63 shares of common stock and some debentures of the Curtis Publishing Company, by which he was employed. By his will he provided:

". . . to Curtis N. Pfau 25 shares of stock in the Curtis Publishing Company also my Social Security and Old Age Pension Money."

By the date of his death, decedent had completed the purchase of and owned 21 shares of the preferred and 53 shares of the common stock.

The learned auditing judge held that the will made a general bequest of 25 shares of stock; that the legatee, through his guardian ad litem, could elect to take preferred stock, and that, as there were only 21 shares of preferred stock, the legatee was entitled to have

"the deficiency . . . met out of other general assets of the estate". Dividends received on the preferred stock were also awarded to the legatee.

The learned auditing judge correctly disposed of the question whether the legatee could elect to take the preferred shares. From Mizener's Estate, 262 Pa. 62, and Galbraith v. Bowen, 5 Dist. R. 352, can be deduced the general rule that when a gift is made in such terms that more than one item or group of items may satisfy the description, the legatee has the choice of selecting which he will receive. The fact that one selection is more advantageous to the legatee than another does not affect the right to make the selection. See Mizener's Estate, supra. The legatee was accordingly entitled to receive the 21 preferred shares held by the legatee. We hold, however, that as to the remaining four shares the legatee may claim only four of the common shares held by the estate.

Viewed by itself, the bequest of "25 shares of stock" is a general bequest, and the estate is subject to any deficiency in that number of shares. As often observed, however, no will has its identical twin, and the cardinal guide is testator's intention. A reading of the complete bequest to the legatee leads to the conclusion that it was "my" shares of stock which were in testator's mind. This was not the skilfully-drawn will in which each word is used with knowledge of the judicial construction which would be placed on it. Here was a very simple will, written in an Army camp, by a private in the United States Army. He had been employed by the Curtis Publishing Company, and the stock in that company was the only stock he owned. It comprised nearly one half of his personal estate. He bequeathed "25 shares of stock in the Curtis Publishing Company also my Social Security and Old Age Pension Money". It is inescapable that, viewed from the posi-

tion of testator's armchair, the 25 shares were "my" shares.

Thus construed, the bequest of 25 of "my" shares was a demonstrative legacy of 25 of the 74 shares owned by decedent. The legatee was entitled to select any 25, regardless of the value of the shares he selected. He was limited, however, to selecting from "my" shares and could not burden the estate with the cost of four preferred shares, when there were only 21 in the estate.

Even if the view be held that the legacy was a general bequest, the legatee would be entitled only to 21 preferred shares and four common shares. It is recognized that if a general bequest were made of "25 preferred shares", and that number were not held by the estate, the legatee could require the purchase of a sufficient number to make the total 25. But does this right follow if the general legacy is merely "25 shares"? Will the law show a double solicitude for a legatee to the point of permitting him first to elect to take preferred shares and secondly to require the estate to purchase the kind of shares which he has elected to take? We do not believe that the doctrine of election should be carried to this extreme. That doctrine is given the legatee to prevent the gift to him from failing for want of definiteness. This right should be limited to permitting him to choose from what is held by the estate. It should not be extended to enable him to compel the estate to purchase for him that which decedent never owned.

The dividends and additional income from the preferred stock were improperly awarded to the legatee. Unless a specific bequest is made, a legatee is not entitled to dividends declared within the year after decedent's death: Hunter's Orphans' Court Commonplace Book, vol. 2, p. 810, par. 11(*i*). In the instant case

decedent died April 20, 1948, so that the dividends in question were necessarily declared and paid within that first year.

A further argument in support of this conclusion is that until the selection of the particular shares is made by the legatee it cannot be determined which stock belongs to him. To give him dividends already declared is to hold that his right of election relates back to the time of decedent's death and makes the legatee the owner of the elected stock as of that date. The doctrine of election should not be extended to that point.

The learned auditing judge properly disposed of the other matters raised by the other exceptions.

Exceptions 1(*a*) and 2(*b*) are sustained. Exception 2(*a*) is sustained in part. The remaining exceptions are dismissed, and the adjudication, as above modified, is confirmed absolutely.